**IUNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| Robin Jarrell,<br><br>*on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Adena Health System,<br><br>Defendant. | Case No. 2:24-cv-00282<br><br>District Judge James L. Graham<br><br>Magistrate Judge Chelsey M. Vascura<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S 12(B)(6) MOTION TO DISMISS**<br><br>(ORAL ARGUMENT REQUESTED) |

Plaintiff Robin Jarrell responds in opposition to Defendant Adena Health System's ("Adena" or "Defendant") Motion to Dismiss Plaintiff's Class Action Complaint. Plaintiff requests oral argument on the basis that this is a class action involving the health records of thousands of patients as well as matters of first impression before this Court.

## I. INTRODUCTION

This case arises from Adena's decision to incorporate and use tracking tools on sensitive portions of its website, https://www.adena.org/ (the "Website") and MyChart Patient Portal ("Patient Portal"), which caused Plaintiff's and other patients' confidential communications, personally identifiable information ("PII"), and protected health information ("PHI") (collectively, "Private Information") to be intercepted, transmitted, received, viewed, and ultimately used by undisclosed third parties—including Meta Platforms, Inc. ("Facebook") and Google, Inc. ("Google")—for marketing purposes without Plaintiff's or Class Members' knowledge or consent.

Adena's Motion to Dismiss is the latest of several such motions from around the country wherein hospitals have argued that their duty to patients does not extend to their websites or patient

portal, and they may instead disclose patients' confidential and sensitive health information to Facebook, Google, and other third parties without first obtaining their express consent. Defendant's attempt to downplay the significance of Plaintiff's claims ignores the many recent decisions from around the country and Ohio that have sustained similar complaints at the motion to dismiss stage.[1]

Likewise, the U.S. Department of Health and Human Services ("HHS") and Federal Trade Commission ("FTC") have also concluded that tracking technologies on hospital websites share protected health information, and therefore entities like Defendant may not disclose or share that information, including information on so-called "unauthenticated" or "public" webpages. As noted in the HHS Bulletin cited in the Complaint:

> Tracking technologies on a regulated entity's unauthenticated webpage that addresses specific symptoms or health conditions, such as pregnancy or miscarriage, or that ***permits individuals to search for doctors or schedule appointments without entering credentials*** may have access to PHI in certain circumstances. For example, tracking technologies could collect an individual's email address and/or IP address when the individual visits a regulated entity's webpage ***to search for available appointments with a health care provider. In this example, the regulated entity is disclosing PHI to the tracking technology vendor, and thus the HIPAA Rules apply***.

---

[1] *See, e.g.*, *McCulley v. Banner Health*, No. CV-23-00985-PHX-SPL, ECF 35 (D. Ariz. May 10, 2024); *Doe v. Tenet Healthcare Corp.*, No. CV 23-12978-PBS, 2024 WL 1756075 (D. Mass. Apr. 23, 2024); *Mekhail v. N. Mem'l Health Care*, No. 23CV00440KMMTNL, 2024 WL 1332260 (D. Minn. Mar. 28, 2024); *Toy v. Life Line Screening of Am. Ltd.*, No. 23-CV-04651-RFL, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024); *In re Meta Healthcare Pixel Litig.*, No. 22-CV-03580, 2024 WL 333883 (N.D. Cal. Jan. 29, 2024); *In re Grp. Health Plan Litig.*, No. 23-CV-267, 2023 WL 8850243 (D. Minn. Dec. 21, 2023); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023); *Cousin v. Sharp Healthcare*, No. 22-cv-2040, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023); *Doe v. Meta Platforms, Inc.*, No. 22-cv-03580, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023); *Yockey v. Salesforce, Inc.*, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023); *Doe v. Boston Med. Ctr. Corp*., No. 2384CV00326-BLS-1, 2023 WL 7105628 (Mass. Super. Ct. Sep. 14, 2023); *Doe v. The Child.'s Hosp. Corp*., 2023 WL 6462578 (Mass. Super. Ct. Sep. 14, 2023); *Stake v. Knox Cmty. Hosp.*, No. 23OT01-0026, 2023 WL 5719594 (Ohio Com.Pl. Aug. 24, 2023); *Doe v. Boone Health, Inc.*, No. 22AC-CC07646, 2023 WL 4996117 (Mo. Cir. July 20, 2023); *Doe v. Regents of Univ. of California*, No. 23-CV-00598, 2023 WL 3316766 (N.D. Cal. May 8, 2023).

First Amended Complaint ("Complaint" or "Compl."), Doc. 21 ¶ 32. To support the Bulletin, HHS relied in part on a prior final rulemaking notice from nearly ten years ago, 78 Fed. Reg. 5566, 5598, stating that "protected health information … may not necessarily include diagnosis-specific information … If the information is tied to a covered entity, then it is protected health information by definition since it is indicative that the individual received health care services or benefits from the covered entity, and therefore it must be protected … in accordance with the HIPAA rules." *Id.* Ohio statutes and courts have long established that the divulgence of patients' medical information is prohibited, and Defendant was on notice as to its obligations and duty to safeguard patients' Private Information. *Id.* ¶ 134.

This case is not about online browsing on a public website, nor does it merely concern the use of benign tools that "analyze user interactions with its website." Def.'s Mem. of Law, Doc. 10-1 ("Mot.") at PageID 90. Rather, it concerns Defendant's decision to utilize Tracking Tools[2] that disregard patients' statutory and common law rights.

Adena's arguments ignore both the Complaint's allegations and the appropriate standard for deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiff specifically alleges: that she (1) accessed Defendant's Website "for the purpose of finding and obtaining medical treatment"; (2) specifically recalls using the "Website to search for [a surgeon], to search for [multiple specialists], to make appointments with her [surgeon and specialists], to search for

---

[2] Although Plaintiff is presently unaware of every type of pixel and tracking tools used on Defendant's Website and Patient Portal during the relevant time period, "Tracking Tools" refers to any technology that divulges confidential information to an unauthorized third-party that: (1) has not executed a HIPAA-compliant business associate agreement with Adena; and (2) for which patients did not execute a HIPAA-compliant marketing authorization. As used herein, Tracking Tools include: (1) Facebook or Meta's pixel, Conversions API tool, Custom Audience, and other "Business Tools" it provides to marketers; and (2) Google Analytics, the Google Tag Manager, and similar tools offered by Google in conjunction with its marketing products such as "DoubleClick."

symptoms related to [her specific medical conditions she entered on the Website] as well as fill out medical forms and review medical test results"; (3) "communicated with Defendant about her past, present, and future medical care and treatment via the Website"; (4) "as Defendant's patient, has received healthcare services from 2004 through the present at hospitals and clinics in Defendant's network"; (5) "observed advertisements on her Facebook account related to [her specific medical] conditions (how to take care of it and what to do for it) as well as Defendant's [specialist and] surgery group"; and that (6) pursuant to the process described in detail in the Complaint, Adena "unlawfully disclosed Plaintiff's Private Information," including her "confidential communications." Compl., ¶¶ 93, 94 98-101, 109-10.[3] These are allegations of fact—not legal conclusions—that must be accepted as true.

## II. FACTUAL BACKGROUND

Adena encourages its patients to use its Website for, *inter alia*, searching for and booking appointments for medical treatment. Compl. ¶¶ 3-4, 6. Unbeknownst to Plaintiff and Class Members, Adena installed and used Tracking Tools that redirected Plaintiff's and Class Members' communications and sensitive and confidential Private Information about their healthcare and medical conditions contained therein. *Id.*, ¶¶ 5-6, 14, 43-49, 54-78, 101-112. The Tracking Tools surreptitiously record and force the transmission of the information patients communicate to Defendant via its Website. When a patient searches for a specific doctor, fills out forms, or searches for a specific medical condition or treatment, those communications with Defendant are surreptitiously duplicated and transmitted to Facebook and/or Google. *Id.*, ¶¶ 6, 61, 99-102, 110.

The information intercepted and disclosed to third parties includes Plaintiff's and Class Members' past, present, and future medical care, including their status as medical patients, health

[3] Plaintiff uses brackets to shield PHI filed under seal in the Complaint. Doc. 21.

conditions, details about their medical appointments, and the text or phrases they type into search bars or text boxes (such as searches for specific doctors for specific conditions). *Id.*, ¶¶ 5-9, 58, 61, 68-78, 88-91, 94-113. This divulgence of PHI to third parties occurs without patients' knowledge, authorization, or consent. *Id.*, ¶¶ 1, 15, 55-56, 59-60, 65, 93. Importantly, the PHI is transmitted alongside patients' persistent identifiers (such as the patient's IP address, device identifiers, Facebook ID, and Google account name), which links their online activity and PHI to their true identity. *Id.,* ¶¶ 7-9, 62-64, 77-78, 91-93, 101-02, 143-52. Defendant subsequently uses this data to retarget patients in marketing campaigns. *Id.*, ¶¶ 46, 113, 154-56, 227, 266.

As Defendant's patient, Plaintiff communicated with Defendant via the Website to search for specific doctors and specialists who could treat her specific medical conditions. *Id.*, ¶¶ 94, 97-101. Plaintiff and Class Members did not consent to Defendant's disclosure of their Private Information and would not have used the Website or paid for Defendant's services had they known their Private Information would be disclosed to third parties. *Id.*, ¶¶ 1, 15, 55-56, 59-60, 65, 93, 104-06, 112, 186, 199-200, 227, 264. Defendant's conduct violates industry standards, Ohio law, HIPAA, and reasonable patients' expectations of privacy. *Id.*, ¶¶ 10-14, 27-33, 115-42.

## III. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Engler v. Arnold*, 862 F.3d 571, 574-75 (6th Cir. 2017) (internal quotations omitted). To survive dismissal, the plaintiff must allege facts sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678. The Court does not consider whether the plaintiff will ultimately prevail, but rather whether the facts permit the Court to infer more than the mere possibility of misconduct. *Id.* at 679.

## IV. LAW & ARGUMENT

### A. Plaintiff Has Stated a Claim for Violation of the Wiretap Act (Count II)

Defendant challenges Plaintiff's claim for violation of the Electronic Communications Protection Act, 18 U.S.C. §2511 ("ECPA") based on the "party exception," which states, "[i]t shall not be unlawful under this chapter for a person . . . to intercept a wire, oral, or electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d). But the party exception does not apply if the communication is "intercepted for the purpose of committing a[] tortious or criminal act in violation of the Constitution or laws of the United States or of any State." *Id.* The crime-tort exception focuses on whether "the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (quotation marks and citation omitted); *accord In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) ("*Meta Pixel I*"). Notably, "[t]he existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose." *Meta Pixel I* at 796. A plaintiff need only "allege that either the primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (quotations & citation omitted).

Defendant's conduct falls squarely within the crime/tort exception because it intended to violate various tort and criminal laws through the interception of Plaintiff's communications, including HIPAA's criminal prohibitions against disclosing "individually identifiable health information" without authorization and Ohio's laws prohibiting the same disclosures. Compl. ¶¶ 14, 56-57, 115-134, 153-56, 205, 212-220, 227-230, 239. Several federal courts have found substantially similar allegations sufficient to trigger the ECPA's crime-tort exception. *See, e.g., Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (finding allegations "sufficient to invoke the HIPAA exception-to-the-party-exception . . . [and that the complaint] plausibly state[d] a claim for relief under the Wiretap Act"); *In re Grp. Health Plan Litig.*, No. 23-CV-267 (JWB/DJF), 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) (similar); *Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (similar); *Mekhail v. N. Mem'l Health Care*, 23CV00440KMMTNL, 2024 WL 1332260, at *5 (D. Minn. Mar. 28, 2024) (similar); *see also Meta Pixel I*, 647 F. Supp. 3d at 797 ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious")[4]; *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding the crime-tort exception applicable based on plaintiffs' allegations that defendant intercepted communications regarding "requests to refill prescriptions and appointment scheduling inquires" in "violation of various state tort claims and state and federal laws").

**1. Plaintiff Has Alleged an Independent Tort**

[4] Defendant also relies on *In re Meta Pixel Healthcare Litig*. but based upon a mistaken interpretation of its holding. Meta is not a covered entity under HIPAA and is therefore has no duty to comply with HIPAA. By contrast, Defendant is a covered entity and subject to HIPAA's requirements. Thus, in *In re Meta Pixel Healthcare Litig*., Plaintiffs could only prevail by showing improper disclosures under California's Confidentiality of Medical Information Action ("CMIA").

Defendant's argument fails to recognize that Plaintiff's allegations are not solely based on its purposeful recording and dissemination of her and other patients' Private Information to unauthorized third parties. *See* Mot. at PageID 96 ("Plaintiff thus alleges only one action – with no intervening human act or decision-making required" and "the alleged interception and disclosure are a singular function"). While this undoubtedly gives rise to several tort claims and a HIPAA violation, Defendant's liability also arises independently from Plaintiff's allegation that Defendant used patients' PHI and PII to generate custom audiences and conduct targeted marketing activities without obtaining patients' express written authorization. *Id.* ¶¶ 57, 115, 153. "Defendant's further use of the Private Information ***after the initial interception and disclosure*** for marketing and revenue generation was in violation of HIPAA and an invasion of privacy." *Id.* ¶ 153 (emphasis added). Moreover, Defendant's marketing activities could have been achieved even in the absence of the act of recording. Indeed, "Custom Audiences" and "Core Audiences" are commonly generated by website owners via manual inputs such as email lists and other data sets without any need to rely on intercepted data.[5] Of course, doing so would require Adena to first obtain a HIPAA-compliant marketing authorization from each of its patients, thereby identifying exactly who the information will be transmitted to (Facebook and Google). Instead, Adena skipped this step altogether, engaged in the alleged interception and disclosure, and circumvented its legal obligations in the process.

[5] The creation of "custom audiences" is briefly addressed in the Complaint (¶ 57), and several of Facebook's online resources for advertisers explain this process: "To make a custom audience from a customer list, you provide us with information about your existing customers and we match this information with Meta profiles. The information on a customer list is known as an "identifier" (such as email address, phone number, address) and we use it to help you find the audiences that you want your ads to reach. Your customer list can either be a CSV or TXT file that includes these identifiers." META BUSINESS HELP CENTRE: CREATE A CUSTOMER LIST CUSTOM AUDIENCE https://www.facebook.com/business/help/170456843145568?id=2469097953376494 (last accessed Apr. 24, 2024).

**2. Plaintiff Has Alleged that Adena Acted with Intent**

Defendant also argues Plaintiff's claim should be dismissed because she has not alleged that the wrongful conduct was purposefully and specifically directed toward *her* with the specific intent to harm *her individually.* Mot. at PageID 97. This misstates the allegations and reads a new requirement into the ECPA without providing any supporting case law. *Id*. Defendant purposely installed and utilized the Tracking Tools to invisibly circumvent HIPAA and other laws that require healthcare providers to obtain their patients' informed consent prior to disseminating their Private Information or using it for marketing purposes. This conduct harms *all* of Defendant's patients uniformly, Plaintiff is one of Defendant's patients, and the ECPA does not require her to allege or prove that Defendant's conduct was specifically intended to harm her individually. To hold otherwise would preclude the ECPA's application in the context of class action lawsuits.

Next, Defendant rehashes its prior arguments and cites *Doe v. Lima Memorial Hospital*, Allen C.P. No. CV-2022-0490, at pp.4, 7 ("*Lima*") to suggest Plaintiff's allegations are "a pure conclusion." Mot. at PageID 97. Notably though, the plaintiff in *Lima* did not allege an ECPA violation at all, and thus this case is inapposite. Defendant goes on to suggest that Plaintiff's own allegations undermine her ECPA claim because one of Adena's motives was "marketing and revenue generation." Mot. at PageID 97. Indeed, many torts and crimes are committed with revenue generation as a motivating factor, but Defendant cites no binding authority for the proposition that marketing and/or revenue generation precludes liability under the ECPA. *See id.* at PageID 99 (citing four out of circuit decisions where the defendants were commercial enterprises, not HIPAA-covered entities, and the communications that were intercepted did not include PHI or other confidential communications).

Third, Defendant argues it is not plausible that a hospital would intentionally harm its own patients. Mot. at PageID 98 (citing no authority in support). This contradicts the allegations in the Complaint and presents a question of fact that cannot be determined at this stage of litigation. Moreover, several courts have disagreed with this argument as evidenced by the growing trend upholding plaintiffs' wiretapping claims when a healthcare provider has installed Tracking Tools on its Website. *See, e.g., Kurowski III*, 2023 WL 8544084, at *2-3; *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *6-8; *Kane*, 2024 WL 1178340, at *4-8; *Mekhail*, 2024 WL 1332260, at *2-6; *Desert Care Network*, 2024 WL 1343305, at *6.

Defendant's fourth argument reasserts the exact same issues addressed in section A1, *i.e.* whether Plaintiff has alleged a tort that exists separately from the interception itself. Mot. at PageID 98 (relying on one case from 1998 and another from 1995 to yet again suggest that Plaintiff has alleged a "results based" theory of a wiretap violation). Defendant is correct that disseminating information to unauthorized third parties is indeed a tort and crime in this instance. However, for the same reasons explained above, the crime-tort exception applies because an independent crime/tort occurs each time that a patients' Private Information is used for marketing purposes without their express authorized consent.

**B. Counts III through VII Are Not Subsumed by *Biddle***

In *Biddle v. Warren General Hospital*, the Supreme Court of Ohio enhanced patient privacy in the State of Ohio by holding that "an independent tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 715 N.E.2d 518 (1999), paragraph one of the syllabus. At this time, Adena does not seek dismissal of Plaintiff's claim for breach of confidence (also referred to as a *Biddle* claim). However, Adena

argues Plaintiff's other state law claims—which are based in statute, equity, and tort—are all subsumed by the *Biddle* claim, regardless of its ultimate viability. Defendant's misguided argument stems from a vague sentence from the last paragraph of *Biddle*:

> Lastly, as to appellees' continued insistence that they be entitled to pursue other theories of liability, we agree with the reasoning of the appellate court that these other theories are either unavailable, inapplicable because of their respective doctrinal limitations, or subsumed by the tort of breach of confidence.

*Id.* at 408–09.[6] This sentence, akin to a summary affirmance, should not be interpreted broadly to mean that all claims are simply subsumed by breach of confidence at the pleading stage. *See Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 182 (1979) ("[T]he precedential effect of a summary affirmance can extend no farther than 'the precise issues presented and necessarily decided by those actions.'") (citation omitted). The stage at which the *Biddle* decision was rendered is important. In holding that other claims were "*either* unavailable, inapplicable because of their respective doctrinal limitations, *or subsumed*," the Supreme Court of Ohio had the benefit of a full evidentiary record, determined that a claim for breach of confidence could proceed to trial, and that based on the facts of that case, the plaintiff's other claims were superfluous or unsupported by evidence. The same cannot be said here at the pleading stage. And the use of "or subsumed" in the last clause indicates there were reasons that certain claims were dismissed other than being subsumed.

**1. Plaintiff's Common Law Claims for Invasion of Privacy and Unjust Enrichment Are Not Subsumed by Biddle**

Following *Biddle*, the Eighth District Court of Appeals issued a published opinion that considered the same arguments Adena makes here, ultimately reversing an order of summary

[6] Defendant also relies upon the Supreme Court of Ohio's decision in *Menorah Park Ctr. for Senior Living v. Rolston*, 164 Ohio St.3d 400, 2020-Ohio-6658, which does not even discuss the issue of subsumption.

judgment that was entered against a plaintiff pursuing claims for breach of confidence, breach of fiduciary duty, and invasion of privacy. *See Herman v. Kratche*, 8th Dist. Cuyahoga No. 86697, 2006-Ohio-5938, ¶¶ 16, 40 n.9, 50. In doing so, the court found that "a physician's breach of a patient's confidence in the form of an unauthorized disclosure of that patient's medical information is an independent tort separate and distinct from the tort of invading one's privacy." *Id.* ¶ 16. *Herman* expressly rejected the argument that "both torts, 'unauthorized disclosure' and 'invasion of privacy,' are subsumed under the single umbrella of 'breach of confidence.'" 2006-Ohio-5938, at ¶ 40 n.9. The same logic applies to Plaintiffs' claims for invasion of privacy and unjust enrichment, which are independent with distinct elements under Ohio law.[7]

Adena's reliance on *Sheldon v. Kettering Health Network*, 2015-Ohio-3268, 40 N.E.3d 661 (2d Dist.), is unpersuasive. This opinion takes at face value the unsupported argument that all claims related to a disclosure of PHI are simply subsumed by *Biddle*. *See id.* at ¶ 29. However, even the decision that *Biddle* affirmed did *not* conclude that claims for invasion of privacy or intentional infliction of emotional distress were subsumed by breach of confidence. *See Biddle v. Warren Gen. Hosp.*, No. 96-T-5582, 1998 WL 156997, at *8-10 (Ohio Ct. App. Mar. 27, 1998) (dismissing these claims because the plaintiff failed to support them with adequate evidence at summary judgment). Moreover, *Sheldon* completely ignores *Herman*, 2006-Ohio-5938, at ¶¶ 16, 40 n.9, 50.

[7] Instead of an unprivileged disclosure, Plaintiffs' invasion of privacy claim requires, *inter alia*, evidence of an intrusion into a private setting. Adena's intrusion was the installation of tracking tools and secret recording of PHI without patient authorization, akin to placing a wiretap on Plaintiff's personal devices, for the purpose of transmitting protected communications to unauthorized third parties. *See* Compl. ¶¶ 14, 56, 238-40.

The Hamilton County Court of Common Pleas subsequently issued a well-reasoned opinion that expressly considered both *Herman* and *Sheldon* under nearly identical circumstances. *See Doe v. Bon Secours Mercy Health*, No. A2002633, 2021 WL 9939010, at *3-5 (Hamilton Cnty., Ohio Com.Pl. Nov. 22, 2021) (declining to dismiss claims for breach of contract, breach of confidence (*Biddle*), and invasion of privacy against hospital that allegedly disclosed patient PHI to Facebook). The court found plaintiff's breach of contract was not subsumed by *Biddle* because, "the source of the obligation allegedly breached is a contract rather than the common law duty recognized in *Biddle*[.]" *Mercy Health*, 2021 WL 9939010, at *5. The same is true here for Plaintiff's unjust enrichment claim, which is based in equity—not tort.

The purpose of an equitable claim like unjust enrichment is to prevent injustice when the plaintiff otherwise lacks an adequate remedy at law. *See Longmire v. Danaci*, 2020-Ohio-3704, 155 N.E.3d 1014, ¶ 29 (10th Dist.) ("[I]f no remedy is available in contract or tort, then the equitable remedy in unjust enrichment may be afforded to prevent injustice.") (alteration in original) (citation omitted). It is premature to dismiss unjust enrichment before the Court has determined the viability of Plaintiff's other claims. Indeed, the Rules of Civil Procedure expressly allow Plaintiff to plead alternative, or even competing, claims at this stage. *See* Fed. R. Civ. P. 8(d); *see also McNamara v. Picken*, 950 F. Supp. 2d 125, 128 (D.D.C. 2013) ("[A] plaintiff may plead inconsistent theories of liability, and may even argue alternative claims to a jury.").

**2. Plaintiff Can Assert Claims for Negligence or Breach of Fiduciary Duty in the Alternative**

Plaintiff is similarly permitted to bring claims for negligence and breach of fiduciary duty in the alternative to a claim for breach of confidence. In *Mercy Health*, the court adopted a middle ground between *Sheldon* and *Herman*, holding that claims for negligence and breach of fiduciary duty were dismissed, but only "with the caveat that plaintiff's *Biddle* claim can proceed based on

intentional and/or negligent conduct if supported by the evidentiary record to be developed as this matter proceeds." *Id.* at *6. The thoughtful analysis in *Mercy Health* settled an issue that Adena has not yet raised—whether a defendant can be held liable for a negligent or reckless breach of confidence. *See id.* ("To determine whether these claims are subsumed …, this Court questions whether a *Biddle* claim includes a claim for unintentional disclosure.").

The *Mercy Health* court, like others, concluded that "*Biddle* does not require intentional disclosure to support a claim." *Id.*[8] In other words, satisfaction of the elements required to prove a claim for negligence or breach of fiduciary duty would necessarily satisfy the elements required to prove a claim for breach of confidence. *See Mercy Health* at *3-6.[9] Therefore, unlike invasion of privacy and unjust enrichment, separate claims for negligence and breach of fiduciary duty would be superfluous. *See id.* at *3-6. This Court should similarly hold that any dismissal of Plaintiff's negligence or fiduciary duty claims are contingent on the ability to pursue breach of confidence under a negligence theory, if supported by the ultimate evidentiary record. Otherwise, like the court held in *Herman*, such claims would present independent and distinct causes of action that are not subsumed by *Biddle*.

**3. Plaintiff's Ohio Statutory Claim Is not Subsumed by *Biddle***

The Supreme Court of Ohio recognized that "R.C. 2307.60 *independently authorize[s]* a civil action for damages caused by criminal acts, unless otherwise prohibited by law[.]" *Jacobson*

---

[8] The court later denied reconsideration of its holding. *Doe v. Bon Secours Mercy Health*, No. A2002633, 2022 WL 18461855 (Hamilton Cnty., Ohio Com.Pl. Mar. 16, 2022); *see also Scott v. Ohio Dep't of Rehab. & Corr.*, 10th Dist. No. 12AP-755, 2013-Ohio-4383, ¶ 29 (rejecting the argument that "unauthorized disclosure under *Biddle* equates to 'intentional' disclosure."); *Doe v. Ohio Dep't of Rehab. & Corr.*, No. 2012-08575, 2014 WL 6673722, at *2 (Ohio Ct.Cl. Nov. 19, 2014) ("[A] disclosure need not be intentional to satisfy the elements of *Biddle*.").

[9] "A claim of breach of a fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care." *Strock v. Pressnell*, 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988).

*v. Kaforev*, 149 Ohio St. 3d 398, 2016-Ohio-8434, ¶ 6 (emphasis added). Express statutory causes of action cannot be subsumed by common law claims like breach of confidence. *See Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, ¶ 61 ("[I]t is not the role of the courts to establish their own legislative policies or to second-guess the policy choices made by the General Assembly."); *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 21 ("A fundamental principle of the constitutional separation of powers … is that the legislative branch is 'the ultimate arbiter of public policy."') (citation omitted); *Salamon v. Taft Broadcasting Co.*, 16 Ohio App.3d 336, 341-42, 475 N.E.2d 1292 (1st Dist. 1984) (recognizing that "it is not within the authority of the judiciary to abolish legislative enactments").

The recognition of an independent cause of action for breach of confidence in *Biddle* was intended to enhance patient protection in the State of Ohio—not provide a sword to strike down statutory protections enacted by the General Assembly. Accordingly, courts have declined to hold that claims for breach of confidence subsume claims based on the violation of an Ohio statute. *See, e.g., Stake*, No. 23OT01-0026, 2023 WL 5719594, at *4 (Knox Cnty., Ohio Com.Pl. Aug. 4, 2023) ("[T]he 'wiretap' claim is a standalone tort claim under R.C. 2933.52, *et seq.*, and R.C. 2933.65(A) gives Plaintiffs a statutory private right of civil action for remedies specified in the statute. The 'wiretap' claim is not subsumed in the *Biddle* claim.").[10] Even cases cited by Adena recognize that breach of confidence does not subsume statutory causes of action. *See, e.g., Doe One v. Caremark, LLC*, 348 F. Supp. 3d 724, 736-38 (S.D. Ohio 2018) (summarily dismissing common law claims without analysis but declining to dismiss claim for disclosure of HIV status under Ohio Revised Code § 3701.24). Plaintiff's Ohio statutory claim is no different; it provides an independent cause

[10] Although the court in *Stake* held that the plaintiff's common law claims were subsumed, this is not persuasive due to the plaintiff's inexplicable decision "not to oppose the motion to dismiss" the common law claims other than breach of confidence. *Stake*, 2023 WL 5719594, at *1.

of action that is not precluded by *Biddle*. Accordingly, the Court should reject Defendant's motion to dismiss Plaintiff's statutory claim.

### C. Counts III, V, and VII Are Sufficiently Pleaded

#### 1. Count III: Plaintiff States a Claim for Liability on Criminal Actions

"By its plain and unambiguous language, Ohio Revised Code § 2307.60 creates a civil cause of action for damages resulting from any criminal act, unless otherwise prohibited by law." *Jacobson*, 2016-Ohio-8434, at ¶ 13. Adena argues that "the statute should not be interpreted as a conduit to collect civil damages and attorney's fees for alleged conduct that might be criminal only under the law of some other jurisdiction, be it federal, state, or even another country." Mot. at PageID 104. But this is a straw man. Plaintiff alleges underlying violations of the United States Code, 42 U.S.C. § 1320d-6(a)(3). Unlike the law of another state or country, the United States Code is intended to protect all Americans, including those living in Ohio. This District has previously declined to dismiss a claim under Ohio Revised Code § 2307.60 for underlying violations of federal law. *See, e.g., Clark v. Pizza Baker, Inc.*, No. 2:18-CV-157, 2019 WL 4601930, at *4 (S.D. Ohio Sept. 23, 2019) (declining to dismiss claim under Ohio Rev. Code 2307.60 based on criminal violation of federal labor law).[11]

Importantly, Ohio Revised Code § 2307.60(A)(1) is a "remedial" statute. *Harris v. Cunix*, 2022-Ohio-839, 187 N.E.3d 582, ¶ 27 (10th Dist.). And "remedial" statutes should be "liberally

[11] State statutes often provide independent causes of action for underlying violations of federal law. For example, California's Unfair Competition Law, Cal. Bus. & Prof. Code Ann. § 17200, prohibits any "unlawful" act or practice. The Ninth Circuit has interpreted this to mean that "virtually any state, federal or local law can serve as the predicate for an action under section 17200." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012); *accord Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017); *see also, e.g., Poole v. Nevada Auto Dealership Invs., LLC*, 449 P.3d 479, 490 (Nev. App. 2019) (violations of federal law provide a cause of action under the Nevada Deceptive Trade Practices Act).

construed." *See* Ohio Rev. Code § 1.11 ("Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice."). Based on the liberal interpretation afforded remedial statutes and the General Assembly's "crystal clear" intention that there be a "civil cause of action for damages resulting from *any* criminal act," *Jacobson*, 2016-Ohio-8434, at ¶ 10 (emphasis in original), the Court should decline to dismiss Plaintiff's claim for civil liability based on criminal violations of HIPAA.

**2. Count V: Unjust Enrichment Is Adequately Pleaded**

To state a claim for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Daily v. Craigmyle & Son Farms, LLC*, 177 Ohio App.3d 439, 2008-Ohio-4034, 894 N.E.2d 1301, ¶ 20 (4th Dist.) (citation omitted). Unjust enrichment occurs "when a party retains money or benefits which in justice and equity belong to another." *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 641 (S.D. Ohio 2020) (quoting *Daily* at ¶ 20).

Defendant first contends that Plaintiff did not confer a benefit upon Defendant. But courts have recognized that there is value in the "dissemination of [a plaintiff's] personal information and by losing the sales value of that information." *In re Facebook Priv. Litig.*, 572 F. App'x 494 (9th Cir. 2014); *see also Finesse Express, LLC v. Total Quality Logistics, LLC* (S.D. Ohio, Mar. 30, 2021, No. 1:20CV235) 2021 WL 1192521, at *3 ("In addition, Plaintiffs allege they were deprived of 'the value of the Confidential Information for which there is a well-established and quantifiable national and international market.' Courts have held that a loss in value of personal information supports a finding that a plaintiff has suffered an injury in fact."). Plaintiff plausibly alleges that Defendant transmitted her and Class Members' PHI. Compl. ¶¶ 1, 4, 27-33, 68-93, 94-111. Just as

there is value in PII, there is value in PHI. Indeed, the entire reason Defendant transmitted Plaintiff's PHI was for marketing purposes. *Id.*, ¶¶ 157-165.

The Complaint clearly alleges Defendant utilized the Pixel and CAPI data for marketing purposes in an effort to bolster its profits and to target specific customers by utilizing data to build profiles for the purposes of retargeting and future marketing. *Id.*, ¶¶ 14, 46-48, 54-57, 61, 153-156. In exchange for disclosing the Private Information of its patients, Defendant is compensated by Facebook in the form of enhanced advertising services and more cost-efficient marketing on its platform. *Id.*, ¶¶ 153-156. There is no reason for Defendant to employ the Pixel if it received no benefit. And Plaintiff's and Class Members' data had value. *Id.*, ¶¶ 157-165.

Secondly, Defendant argues that Plaintiff "fails to allege that she provided the information in exchange for data-security services from Adena" and that "healthcare services" are "separate and distinct from use of the Website" because anyone can use the Website without paying for medical care. Mot. at PageID 105-06. But Plaintiff alleges that "[a]s Defendant's patient, Plaintiff reasonably expected that her online communications with Defendant were solely between herself and Defendant and that such communications would not be transmitted to or disclosed to a third party. But for her status as Defendant's patient, Plaintiff would not have disclosed her Private Information to Defendant." Compl. ¶ 105. Thus Plaintiff's disclosure of PHI was tied to her status as a patient and not a generic user of the Website.

Thirdly, Defendant argues that Plaintiff's overpayment or "benefit of the bargain" theory of damages can only be adopted if there was something defective or dangerous about the healthcare services Plaintiff received from Defendant. Mot. at PageID 106. Defendant relies on out of jurisdiction cases related to data breaches for this contention. But similar allegations have been found to be sufficient for unjust enrichment claims in other cases involving the same allegations

related to the use of Tracking Technology on healthcare providers' websites. *See, e.g., Doe v. Tenet Healthcare Corp.*, No. CV 23-12978, 2024 WL 1756075, at *5 (D. Mass. Apr. 23, 2024); *Mekhail*, 2024 WL 1332260, at *12-14; *Desert Care Network*, 2024 WL 1343305, at *10; *In re Grp. Health Plan*, 2023 WL 8850243, at *4; *Doe v. Boone Health, Inc.*, No. 22AC-CC07646, 2023 WL 4996117, at *4 (Mo.Cir. July 20, 2023). Finally, Plaintiff certainly alleges it is unjust for Defendant to retain the benefits it derived from the use and disclosure of Plaintiff's PHI. Compl. ¶¶ 250, 252.

**3. Count VII: Negligence Is Not Barred by the Economic-Loss Rule**

Defendant argues that Plaintiff cannot state a negligence claim because her damages are purely economic in nature. But Plaintiff clearly alleges non-economic privacy injuries. *See Allen v. Wenco Mgmt., LLC*, No. 1:23 CV 103, 2023 WL 6456571, at *3-4 (N.D. Ohio Sept. 29, 2023) ("Allen's alleged privacy injury satisfies the 'damages' element of negligence…. Because such a loss is no doubt intangible—and thus noneconomic—the economic-loss rule doesn't apply.").[12]

Regardless, the economic loss rule does not apply here because Plaintiff does not allege that her claims derive from a contract. The economic loss rule "stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that 'parties to a commercial transaction should remain free to govern their own affairs.'" *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 6 (quoting *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 42, 537 N.E.2d 624 (1989)). "Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed

[12] Although the privacy injury in *Allen* did not involve PHI like here, Ohio courts recognize that "[t]he unauthorized disclosure of nonpublic medical information … causes an injury at the moment the disclosure occurs because medical information is inherently private and because the public has a clearly established interest in protecting the relationships between doctors and patients." *Levine v. DSW, Inc.*, No. 586371, 2008 WL 7810070 (Cuyahoga Cnty., Ohio Com.Pl. Aug. 1, 2008).

only by agreement." *Corporex* at ¶ 6. In other words, "[w]hen a duty in tort exists, a party may recover in tort. When a duty is premised entirely upon the terms of a contract, a party may recover based upon breach of contract." *Id.* at ¶ 10; *Navistar, Inc. v. Dutchmaid Logistics, Inc.*, 2021-Ohio-1425, 171 N.E.3d 851, ¶ 27 (Ct. App.) ("where a tort claim alleges a duty was breached independent of the contract, the economic loss rule does not apply"). See *also Allen*, 2023 WL 6456571, at *5 ("Tucker's assertion that the 'economic loss doctrine does not hinge on how the defendant's duty arose' directly contravenes the Supreme Court of Ohio's leading economic-loss-rule precedent.").

Cases cited by Defendant support this distinction. *See, e.g., Foster*, 493 F. Supp. 3d at 639 ("Plaintiff's tort and breach of contract claims are premised on the same allegations of wrongdoing and are based on the same claims for damages. Accordingly, Plaintiff's negligence claim is barred by the economic loss doctrine."); *Newman v. Total Quality Logistics, LLC*, No. 1:20CV173, 2021 WL 1192669, at *7 (S.D. Ohio Mar. 30, 2021) ("[a]s in *Foster*, Plaintiffs' negligence claims are premised on the same allegations and the same claims for economic damages which would arise from a claim based on a breach of the [Broker-Carrier Agreement].").

Here, Plaintiff alleges Defendant breached an independent duty untethered to any contract, i.e., the duty to protect Plaintiff's confidential health information. That duty is owed under common law according to various privacy torts, as well as under HIPAA and Ohio statutes. *Herman*, 2006-Ohio-5938, ¶¶ 16, 40 n.9, 50; R.C. § 3798.03(A)(2); R.C. § 3798.04. Accordingly, Plaintiff's negligence claim is not barred by the economic loss rule.

## V. CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss should be denied.

DATE: May 17, 2024

Respectfully Submitted,

/s/ Clint Watson
Joseph M. Lyon
Clint Watson
**The Lyon Firm**
2754 Erie Ave.
Cincinnati, Ohio 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
*jlyon@thelyonfirm.com*
*cwatson@thelyonfirm.com*

Terence R. Coates
Dylan J. Gould
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court St., Ste. 530
Cincinnati, Ohio 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

Gary M. Klinger*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
*gklinger@milberg.com*

Glen L. Abramson*
Alexandra M. Honeycutt*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (866) 252-0878
*gabramson@milberg.com*
*ahoneycutt@milberg.com*

Bryan L. Bleichner*
Philip J. Krzeski
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700

Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
*bbleichner@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

***Counsel for Plaintiff and the Putative Class***

* *pro hac vice* forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2024, I served a copy of the foregoing via electronic filing in the ECF system.

/s/ Clint Watson______________________
Clint Watson