**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

Robin Jarrell, *on behalf of herself and all others similarly situated*,

Plaintiff,

v.

Adena Health System,

Defendant.

Case No.: 2:24-CV-00282

Judge James L. Graham

Magistrate Judge Chelsey M. Vascura

**REPLY IN SUPPORT OF**
**DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS**

Christopher G. Dean (0092883)
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
cdean@mcdonaldhopkins.com

*Trial Attorney for Adena Health System*

# I. INTRODUCTION[1]

This case is about an alleged data disclosure. Although Plaintiff does not claim to have suffered identity theft or other tangible harm as a result of the alleged disclosure, she nevertheless asserts a litany of tort, contract, and statutory claims against Adena and seeks to impose crippling statutory damages on it despite the absence of any financial loss. In its Motion to Dismiss, Adena demonstrated the reasons Plaintiff's claims fail under applicable law. In her Opposition, Plaintiff accuses Adena of "ignor[ing] both the Complaint's allegations and the appropriate standard for deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." (Opp. at PageID 504.) Those stock arguments in opposition to a motion to dismiss have no application here; Plaintiff does not even try to support them in her brief, and the arguments she offers do not save her claims.[2]

# II. ARGUMENT

Counts II through VII of the Complaint should be dismissed because they fail to state a claim for relief and/or are subsumed by the *Biddle* claim. Each count is addressed in turn below.

## A. Count II Fails to State a Claim for Violation of the Wiretap Act.

As Adena explained in its opening brief, Plaintiff's wiretapping claim should be dismissed for failure to allege (1) an independent crime or tort, and (2) an intent to harm. (Memo. at PageID 94-99.) In the Opposition, Plaintiff argues that she adequately alleged both an independent tort and that Adena acted with an intent to harm her. (Opp. at PageID 507-11.) Plaintiff is wrong.

---

1 Capitalized terms not otherwise defined herein have the meaning ascribed to them in Adena's Memorandum in Support of Defendant's Rule 12(b)(6) Motion to Dismiss (the "Memo."). (ECF No. 10-1.) Plaintiff's Response in Opposition to Adena's Motion to Dismiss is referred to herein as the "Opposition" and cited herein as "(Opp. at __)." (ECF No. 25.)

2 Plaintiff also accuses Adena of attempting "to downplay the significance of [her] claims" and ignoring a string of cases that she believes supports her position. (Opp. at PageID 503 & n.1.) Not so. None of the cases she cites are binding on this Court, much less directly address the specific arguments Adena raises here, and Adena has not moved to dismiss Plaintiff's *Biddle* claim.

**1. Plaintiff failed to show that she alleged an independent crime or tort.**

To state a wiretapping claim under the crime-tort exception, a plaintiff must allege a crime or tort that is distinct from the interception itself, but here Plaintiff alleged only *one* action in which the supposedly unlawful act (the disclosure of personal information) occurred simultaneously with the interception (the so-called wiretap). (Memo. at PageID 96.)

Tellingly, Plaintiff does not dispute Adena's case law or arguments on this issue, thus conceding all of those points. *See Reeves v. P&E Logistics, Inc.*, No. 2:21-CV-4167, 2022 WL 899688, at *6 n.3 (S.D. Ohio Mar. 28, 2022) ("A plaintiff's failure to oppose an argument raised on a motion to dismiss is a concession of that argument and an abandonment of the associated claim."). Nor does she cite any case law or other authority in support of her position on this point. Plaintiff's failure to rebut Adena's argument, provide the legal basis for her position, and develop her own argument in any meaningful way is dispositive of the wiretapping claim.

Rather than disputing Adena's arguments, Plaintiff instead criticizes Adena for supposedly "fail[ing] to recognize that Plaintiff's allegations" purportedly "are not solely based on" Adena's alleged disclosure of her Private Information. (Opp. at PageID 509.) Plaintiff's only support for her half-hearted argument that Adena supposedly failed to address her allegations are two passing, and completely opaque, references buried in her prolix 266-paragraph Complaint to Adena's purported use of something called "custom audiences" and of Private Information "after the [alleged] initial interception and disclosure." (*Id.* (citing paragraphs 57 and 153 of the Complaint [ECF No. 20]).) The relevant portions of the paragraphs on which Plaintiff relies are as follows:

- "The Tracking Tools allow Defendant to optimize the delivery of ads, measure cross-device conversions, create custom audiences, and decrease advertising and marketing costs," (Compl., PageID 378, ¶ 57); and

- "Defendant's further use of the Private Information after the initial interception and disclosure for marketing and revenue generation was in violation of HIPAA and an invasion of privacy," (*id.*, PageID 400, ¶ 153).

Neither allegation comes remotely close to establishing the independent act necessary for Plaintiff to invoke the Wiretap Act's crime-tort exception. Plaintiff alleges no facts at all to support either assertion, let alone to sufficiently demonstrate the existence of an independent act. Indeed, the words "custom audience" and "further use . . . after initial interception and disclosure" shed no light on what Adena supposedly did with the Private Information, and the mere incantation of them cannot salvage Plaintiff's otherwise deficient claim.[3] Plaintiff's wiretapping claim plainly concerns Adena's alleged collection and disclosure of Private Information through tracking technology on its Website, and her after-the-fact and unsupported contention that Adena may have done something else with the information falls well short of stating a wiretapping claim.

**2. Plaintiff did not (and cannot) show she alleged Adena intended to harm her.**

The wiretapping claim should be dismissed for the additional reason that Plaintiff fails to allege Adena acted with a deliberate intent to harm her or the putative class. (Memo. at PageID 97-99.) Adena demonstrated four separate ways in which the claim falls short in this regard. (*Id.*)

Rather than confront those points, Plaintiff appears to argue – although she studiously stops short of expressly stating – that she had no obligation under the Wiretap Act's crime-tort exception to show Adena acted with an intent to harm her. (*See* Opp. at PageID 510.) But as Adena explained in its Motion (Memo. at PageID 94-95), and as Plaintiff fails to rebut, that argument is contrary to

3 Plaintiff tries to improve her allegations by adding new information about how "custom audiences" work. (Opp. at PageID 509 n.5.) But that detail is not only unrelated to Adena, it also is not properly before the Court: "It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ." *Roulhac v. Sw. Reg'l Transit Auth.*, No. 1:07CV408, 2008 WL 920354, at *4 (S.D. Ohio Mar. 31, 2008) (internal quotations omitted).

(a) the plain language of the Wiretap Act[4]; (b) the case law interpreting the Wiretap Act[5]; and (c) the policy rationale for the Wiretap Act's imposition of draconian statutory penalties of up to $10,000 per violation – namely, the "evil purposes" that the statute governs[6]. Plaintiff offers no response to the cases Adena cites, including, most notably, the Sixth Circuit's decision in *Boddie* and the Second Circuit's decision in *Caro*, neither of which Plaintiff even mentions in her brief.[7]

Plaintiff next appears to take issue with Adena's argument that her allegation that Adena acted "for the purpose of committing a tortious or criminal act" is a conclusion to which no weight should be given. Specifically, she contends that the case on which Adena relies – *Doe v. Lima Memorial Hospital*, Allen C.P. No. CV-2022-0490, which found nearly identical allegations to be "merely conclusions" in dismissing a wiretapping claim – is inapposite because the plaintiff in *Lima* asserted a claim under Ohio's analogue of the Wiretap Act. (Opp. at PageID 510.) But that factual distinction is irrelevant to the legal principle for which Adena cited *Lima*. And in any event, Plaintiff does not even try to explain how her allegation is anything other than a pure conclusion.

---

4 *See* 18 U.S.C. § 2511(2)(d) (to invoke the crime-tort exception, the "communication [must be] intercepted for the purpose of committing any criminal or tortious act") (emphasis added).

5 *E.g.*, *Boddie v. ABC, Inc.*, 881 F.2d 267, 270 (6th Cir. 1989) ("We think it is the use of the interception with intent to harm . . . that is critical to liability . . . ."); *see also Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("But Congress limited the cause of action to instances where one party to the conversation deliberately seeks to harm the other participant through the information intercepted."); *In Re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Under this exception, plaintiffs must allege that either the 'primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously.'"); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) (key distinction between permissible and impermissible disclosures is whether "defendant's intent . . . was to injure another party").

6 *Boddie*, 881 F.2d at 270; (Memo. at PageID 95 & n.2).

7 Plaintiff also argues that Adena read a new requirement into the Wiretap Act by asserting she must allege wrongful conduct directed at her individually (as opposed to the putative class). (Opp. at PageID 510.) This is a misreading of Adena's argument. Adena's argument that Plaintiff must allege an intent to harm her is not about Plaintiff *individually*; it is about *all* putative class members, including Plaintiff. In other words, Adena argues – and the case law shows – Plaintiff must allege Adena deliberately sought to harm class members, which necessarily includes her.

Plaintiff also asserts that "many torts and crimes are committed with revenue generation as a motivating factor," and then criticizes Adena for not citing "binding authority for the proposition that marketing and/or revenue generation precludes liability under the ECPA." (Opp. at PageID 510.) Though unclear, Plaintiff's argument seems to be that an alleged intent to generate revenue is a sufficient allegation of intent to harm under the Wiretap Act. Numerous courts have rejected this argument, (Memo. at PageID 99 (collecting cases)[8]), and Plaintiff cites nothing to the contrary.

Plaintiff further contends that whether she plausibly alleged Adena intentionally harmed its own patients is a question of fact that cannot be determined at this stage and (inconsistently) that several courts have disagreed with Adena's argument. (Opp. at PageID 511 (citing five cases).) Yet, courts regularly decide issues of plausibility at the pleading stage; indeed, plausibility is part of the pleading standard itself. *E.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (to survive dismissal, a plaintiff must "state a claim to relief that is plausible on its face"). And none of the cases Plaintiff cites directly addresses the plausibility of a specific allegation – which is not even pled in this case – that a hospital defendant deliberately sought to harm its patients.

Finally, Plaintiff makes a lackluster attempt to respond to Adena's point that her "results based" theory of liability has been rejected by courts. (Opp. at PageID 511) In doing so, she once again fails to provide any case law for her position or respond in any meaningful sense to Adena's authority other than to point out that one case was from 1998 and another from 1995. (*Id.*) But Adena cited more (and more-recent) cases – including federal appellate decisions – than the two that Plaintiff tries to sweep under the rug. (Memo. at PageID 98-99.) Plaintiff's argument falls flat.

---

[8] *E.g.*, *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) ("[T]he tort or crime exception cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.").

**B. Counts III through VII Are Subsumed by *Biddle*.**

Plaintiff's common-law and Ohio statutory claims arise from the same factual basis as – and thus are subsumed by – her *Biddle* claim. (Memo. at PageID 99-103.) Plaintiff's arguments for why *Biddle* does not subsume her Ohio claims lack merit. (*See* Opp. at PageID 511-17.)

Plaintiff first attempts to minimize the significance of the Ohio Supreme Court's holding that a *Biddle* claim subsumes other causes of action by recasting the holding as "akin to a summary affirmance" that should not be interpreted broadly and in any event more appropriate for resolution after discovery based on an evidentiary record. (Opp. at PageID 512.) But the *Biddle* Court's reference to subsummation was no mere "summary affirmance"; it was the conclusion and holding that followed the Court's thorough analysis of the law and policy considerations that justified its recognition of a cause of action for the unauthorized disclosure of medical information, *see Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 399-409, 715 N.E.2d 518 (1999), and it expressly adopted the reasoning of the appellate court below, *id.* at 409. Even if *Biddle* could be considered a "summary affirmance," as a holding of the Ohio Supreme Court, Adena respectfully submits that *Biddle*'s precedential effect should not be disregarded by a federal court when interpreting Ohio law. And finally, Plaintiff is wrong that *Biddle* applies only after discovery. Although the appeals in *Biddle* may have worked their way up to the Supreme Court following summary judgment, the Court's subsummation holding was based on the law, which is appropriate to raise and address on the pleadings stage. *See id.*; *see also John Doe One v. Caremark, LLC*, 348 F. Supp. 3d 724, 736 (S.D. Ohio 2018) (dismissing tort claims "[b]ecause a *Biddle* claim is properly presented").

Plaintiff next argues that her claims for invasion of privacy and unjust enrichment are not subsumed by *Biddle* because an intermediate appellate court in *Herman v. Kratche*, 8th Dist. Cuyahoga No. 86697, 2006-Ohio-5938, and a common pleas court in *Doe v. Bon Secours Mercy*

*Health*, No. A2002633, 2021 WL 9939010 (Hamilton Cnty., Ohio Com.Pl. Nov. 22, 2021), concluded that claims for breach of confidence are distinct from claims for invasion of privacy. (Opp. at PageID 512-14.) In limiting her argument to invasion of privacy and unjust enrichment, Plaintiff concedes the point with respect to her negligence and breach-of-fiduciary-duty claims. And the arguments she does make are misplaced, because *Herman* predates not only the appellate decision on which Adena relies (*Sheldon v. Kettering Health Network*, 2015-Ohio-3268, 40 N.E.3d 661 (2d Dist.)), but also the Ohio Supreme Court's recent decision in *Menorah Park Center for Senior Living v. Rolston*, which affirmed *Biddle* and expressly identified "invasion of privacy" as being among the claims that are "ill-suited for the purpose of addressing a breach-of-confidence situation." 2020-Ohio-6658, 164 Ohio St. 3d 400, 404, 173 N.E.3d 432, 437.[9] The court in *Doe v. Lima Memorial Hospital*, Allen C.P. No. CV-2022-0490, extended the same logic to a claim for unjust enrichment, which Plaintiff fails to address in the Opposition. And even if the decisions in *Herman* and *Mercy Health* had some precedential value in Ohio state courts, respectfully this Court is bound to follow the decisions of Ohio's Supreme Court in interpreting and applying Ohio law. *E.g.*, *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) ("On questions of state law, this Court is bound by the rulings of the state supreme court.").

Plaintiff's third argument is that she can plead her claims for negligence and breach of fiduciary duty in the alternative because the court of common pleas in *Mercy Health* dismissed those claims only with a "caveat" related to an issue that, as Plaintiff acknowledges, Adena did not raise in its Motion. (Opp. at PageID 514-15.) There are multiple problems with this confusing argument. *First*, rather than explaining the supposed legal basis on which she can plead claims for

---

[9] Additionally, *Herman*'s conclusion that invasion of privacy and breach of confidence are "separate and distinct torts" appears only in a footnote and does not include any analysis or citation to any case in support. 2006-Ohio-5938, at ¶ 40 n.9.

negligence and breach of fiduciary duty in the alternative, Plaintiff actually acknowledges those claims should be dismissed, as they were in *Mercy Health*. (Opp. at PageID 515.) *Second*, the fact that the *Mercy Health* court dismissed certain claims confirms that *Biddle* can and does apply to subsume claims at the pleading stage. And *third*, federal rules do not appear to provide a procedural mechanism for the type of "contingent dismissal" of claims that Plaintiff is envisioning. *See Grogan v. Hermann Buss GmbH & Cie KG*, No. 4:20-CV-03337, 2023 WL 6394383, at *3 (S.D. Tex. Sept. 29, 2023) ("Grogan's novel theory of contingent dismissal is presented without any legal support, . . . and this Court likewise finds none."). Thus, full dismissal is warranted here.

Finally, Plaintiff argues that *Biddle*, as a common-law claim, cannot subsume her express statutory claim under Ohio law. This, she says, is for reasons of separation of powers and because some courts in Ohio, including *Doe One v. Caremark, LLC*, 348 F. Supp. 3d 724 (S.D. Ohio 2018), distinguish between common-law and statutory claims for purposes of *Biddle* subsummation. (Opp. at PageID 515-16.) Plaintiff's argument fails for two reasons. *First*, it mischaracterizes Adena's argument. Contrary to Plaintiff's contention, Adena does not argue that *Biddle* eliminated a legislatively created express statutory claim; it argues that in the context of an alleged unauthorized disclosure of PHI, post-*Biddle* other claims arising from the same factual root, including under R.C. section 2307.60, simply do not apply. Thus, no separation-of-powers issue is presented. And *second*, Plaintiff overreaches in arguing that cases like *Doe One* "recognize that breach of confidence does not subsume statutory causes of action." (Opp. at PageID 516) *Doe One* does no such thing. The defendant there did not move to dismiss the statutory claim as subsumed by *Biddle*. *See Doe One*, 348 F. Supp. 3d at 736-38. Thus, the *Doe One* court had no occasion to address that issue and therefore did not draw the distinction that Plaintiff here tries to create.

**C. Counts III, V, and VII Fail to State a Claim for Independent Reasons.**

Plaintiff's claims for (1) civil liability arising from a criminal act, (2) unjust enrichment, and (3) negligence fail to state a claim for independent reasons. (Memo. at PageID 103-08.)

**1. Count III: Plaintiff fails to state a claim for liability based on criminal actions.**

Plaintiff's claim under Ohio Revised Code section 2307.60 for civil liability based on criminal actions fails because that statute concerns – and should be interpreted to apply only to – criminal acts arising under *Ohio* law, but the only supposedly criminal action Plaintiff alleges is a violation of *federal* law. (Memo. at PageID 103-04.) Plaintiff calls this argument a straw man because, "[u]nlike the law of another state or country, the United States Code is intended to protect all Americans, including those living in Ohio," and argues that, as a remedial statute, R.C. 2307.60 should be liberally construed in her favor. (Opp. at PageID 517-18.) This goes nowhere.

*First*, Plaintiff fails to respond to Adena's argument that both the text of the statute – including its many references to Ohio law – and important policy considerations support limiting the application of the statute to criminal acts arising under Ohio law. (Memo. at PageID 103-04.) *Second*, nothing in the text of the statute indicates a legislative intent to expand the application of the statute to criminal acts arising only outside of Ohio law. And *third*, Plaintiff cites no authority expressly endorsing application of the statute to criminal acts arising only outside of Ohio law. That question was neither presented nor addressed in *Jacobson v. Kaforey*, 2016-Ohio-8434, 149 Ohio St. 3d 398 or *Clark v. Pizza Baker, Inc.*, No. 2:18-CV-157, 2019 WL 4601930 (S.D. Ohio Sept. 23, 2019), the only cases Plaintiff cites for her argument. (Opp. at PageID 517-18.)

**2. Count V: Plaintiff fails to state a claim for unjust enrichment.**

Plaintiff fails to allege that she (a) conferred a benefit on Adena, (b) provided her personal information to Adena in exchange for data-security services, (c) "overpaid" for any services, or

(d) would suffer injustice if Adena retains whatever benefit she supposedly provided. (Memo. at PageID 105-06.) Plaintiff's counter arguments do not save her claim. (Opp. at PageID 518-20.)

As to the first point – that Plaintiff did not allege she conferred a cognizable benefit on Adena – Plaintiff fails to respond to Adena's case law that courts routinely reject the contention that PII has an independent monetary value. Instead, she argues that courts recognize that "there is value in the dissemination of [a plaintiff's] personal information and by losing the sales value of that information." (Opp. at PageID 518 (internal quotation omitted).) But that argument (and the cases Plaintiff cites) concerns the supposed *injury* and *damage* suffered by a plaintiff, not the purported *benefit* conferred on the defendant. *See In re Facebook Priv. Litig.*, 572 F. App'x 494 (9th Cir. 2014) (concerning damages); *Finesse Express, LLC v. Total Quality Logistics, LLC*, No. 1:20CV235, 2021 WL 1192521, at *3 (S.D. Ohio Mar. 30, 2021) (concerning injury in fact). And of course, Plaintiff does not allege that she attempted or intended to sell her PII or otherwise to derive economic value from it, which is a further fatal defect in her argument. *E.g.*, *Fraga v. UKG, Inc.*, No. 22-20105-CIV, 2022 WL 19486310, at *11 (S.D. Fla. May 10, 2022) (collecting cases).

As to the second point – that Plaintiff did not allege she provided her personal information in exchange for data-security services – Plaintiff responds only by citing her allegations that she provided her information with the expectation that it would be kept confidential. (Opp. at PageID 519.) That argument misses the point. The question for purposes of the unjust-enrichment claim is not whether Plaintiff alleges she had an expectation of privacy; the question is whether she alleges she provided her information in exchange for some benefit that she supposedly did not receive. The answer plainly is "no." Plaintiff alleges she provided her PII in order to receive "healthcare services," (Compl., PageID 398, ¶ 142), the provision and quality of which is not at issue here.

As to the third point – that Plaintiff did not allege she overpaid for any services – Plaintiff merely criticizes Adena for relying on out-of-jurisdiction cases to support its argument, but then ironically goes on to herself rely only on out-of-jurisdiction cases – none of which even addresses, much less sanctions, an "overpayment" theory of unjust enrichment. (*See* Opp. at PageID 519-20.)

And as to the last point – that Plaintiff did not allege any injustice if Adena retains whatever benefit she claims to have provided – Plaintiff offers only a single sentence, unburdened by any fact or analysis, concluding that she adequately alleged injustice. (Opp. at PageID 520.) As supposed support, she cites two paragraphs of her Complaint (PageID 420, ¶¶ 250, 252) that themselves allege only the conclusion of some injustice. That hardly satisfies her pleading burden.

**3. Count VII: The negligence claim is barred by the economic-loss rule.**

Plaintiff's claim for negligence is barred by the economic-loss rule. (Memo. at PageID 106-08.) In the Opposition, Plaintiff protests that (a) she alleges non-economic privacy injuries, and (b) in any event, the economic-loss rule is inapplicable because she does not allege that her claims derive from a contract. (Opp. at PageID 520-21.) Neither argument holds water.

As to the former argument, although Plaintiff asserts that she "clearly alleges non-economic privacy injuries," (Opp. at PageID 520), she does not cite anything in her Complaint for that assertion or otherwise explain what supposed non-economic injuries she claims to have suffered. And the only case she cites, *Allen v. Wenco Management, LLC*, No. 1:23 CV 103, 2023 WL 6456571 (N.D. Ohio Sept. 29, 2023), which concluded that an alleged loss of privacy was a non-economic injury sufficient to avoid application of the economic-loss rule, is at odds with multiple decisions from the Southern District of Ohio, which held otherwise in the context of claims arising from data breaches involving the disclosure of personal information. *See, e.g.*, *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-CV-184, 2023 WL 423504, at *4 (S.D. Ohio

Jan. 26, 2023) (dismissing negligence claim based on economic-loss rule despite alleged "injuries involving invasion and loss of privacy, emotional distress, stress, anxiety, fear, nervousness, and anger"); *Newman v. Total Quality Logistics, LLC*, No. 1:20cv173, 2021 WL 1192669, *6 (S.D. Ohio Mar. 30, 2021) (dismissing negligence claim based on economic-loss rule); *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 639 (S.D. Ohio 2020) (same). As the court in *Tucker* explained, "the economic loss doctrine precludes a claim based on mental injuries unless they are accompanied by 'an allegation that Plaintiff 'feared or saw some quantifiable physical loss,'" *Tucker*, 2023 WL 423504 at *4 (quoting *Foster*, 493 F. Supp. 3d at 638) – which Plaintiff here indisputably does not allege.

As to the latter argument, the fact that Plaintiff does not assert a contract claim here is immaterial. "'The economic loss doctrine holds that absent tangible physical harm to persons or tangible things there is generally no duty to exercise reasonable care to avoid economic losses to others. . . . These economic losses may be recovered in contract only.'" *Newman*, 2021 WL 1192669 at *6 (quoting *Long v. Time Ins. Co.*, 572 F. Supp. 2d 907, 911 (S.D. Ohio 2008)). Application of the economic-loss rule does not turn on whether a plaintiff asserts or adequately states a claim for breach of contract. In *Newman*, for example, the court dismissed the breach-of-implied-contract claim before finding that the economic-loss rule barred the negligence claim. 2021 WL 1192669 at *6-7. Likewise, in *Tucker*, the economic-loss rule barred the negligence claim even though the plaintiff failed to allege the existence of an express or implied contract. 2023 WL 423504 at *4-6. The dispositive point is that Plaintiff fails to allege any "actual damages" that are "in addition" to what might be sought in a contract claim. *Foster*, 493 F. Supp. 3d at 639.

## III. CONCLUSION

For the foregoing reasons, Adena respectfully requests that the Court grant the Motion, dismiss Counts II through VII of Plaintiff's Class Action Complaint, and award Adena such other and further relief as is appropriate.

Respectfully submitted,

*/s/ Christopher G. Dean*
Christopher G. Dean (0092883)
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
cdean@mcdonaldhopkins.com

*Trial Attorney for Adena Health System*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully submitted,

*/s/ Christopher G. Dean*
Christopher G. Dean (0092883)
McDonald Hopkins LLC

*Trial Attorney for Adena Health System*