**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **Robin Jarrell,** | : |
| *on behalf of herself and all others similarly situated,* | : Case No. 2:24-cv-00282 |
| **Plaintiff,** | : |
| v. | : Judge Graham |
| **Adena Health System,** | : Magistrate Judge Vascura |
| **Defendant.** | : |

**OPINION & ORDER**

This matter is before the Court upon the motion to dismiss filed by Defendant Adena Health System ("Adena"). Doc. 10. Adena is a healthcare services provider. Plaintiff Robin Jarrell ("Plaintiff") initiated this class action seeking damages based on Adena's alleged use of certain tracking tools on its website, which Plaintiff contends has resulted in the unauthorized disclosure of personal health information to entities such as Facebook and Google. *See* Am. Compl., Doc. 20. Adena raises various arguments seeking the dismissal of Counts II-VII of Plaintiff's Complaint. For the reasons that follow, Adena's motion is hereby **GRANTED** as to Counts IV, VI, and VII of Plaintiff's complaint, and **DENIED** as to the remaining counts therein.

**STANDARD OF REVIEW**

Adena brings a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in favor of the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

[1]

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Consequently, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

Plaintiff asserts the following seven (7) claims against Adena in her complaint:

> **Count I: Breach of Confidence** – a tort under Ohio law commonly referred to as a "*Biddle* claim," based on *Biddle v. Warren General Hospital*, 715 N.E.2d 518 (Ohio 1999).[1]
>
> **Count II: Violation of Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1) *et seq*.** – based on Adena's alleged unauthorized interception, use, and disclosure of Plaintiff's information.
>
> **Count III: Civil Liability for Criminal Actions** – As authorized by Ohio Rev. Code § 2307.60, based on conduct alleged to have violated 42 U.S.C. § 1320d-6(a)(3), which prohibits knowingly disclosing individually identifiable health information to a third party.
>
> **Count IV: Invasion of Privacy** – based on the "intrusion upon seclusion" theory.
>
> **Count V: Unjust Enrichment** – based on the theory that the content of the unauthorized disclosures had value to Plaintiff and, by using such disclosures for marketing and revenue purposes, Adena unjustly retained benefits therefrom.

---

[1] Adena's motion does not argue for dismissal of the *Biddle* claim.

[2]

>     **Count VI: Breach of Fiduciary Duty** – brought in the alternative to the *Biddle* claim in Count I.
>
>     **Count VII: Negligence** – also brought in the alternative to the *Biddle* claim in Count I.

*See* Am. Compl., Doc. 20.

## DISCUSSION

The Electronic Communications Privacy Act ("ECPA") prohibits interception of "any wire, oral, or electronic communication." 18 U.S.C.A. § 2511(1)(a) (West). Plaintiff in this case alleges that Adena violated the ECPA through its website, www.adena.org. Specifically, Plaintiff alleges that Adena installed certain "Tracking Tools"[2] onto its website, and that those tools "track and collect communications with the Defendant via the Website and surreptitiously force the user's web browser to send those communications to undisclosed third parties, such as Facebook or Google." Am. Compl., doc. 20, ¶ 5. These communications are alleged to contain personally identifiable information ("PII") and protected health information ("PHI") (collectively, "*Biddle* material"). *Id.* at ¶ 1.[3] To be clear, the allegedly intercepted communications at issue appear limited to a user's relatively rudimentary interactions with the public portion of the website, as opposed to the likely more detailed information communicated behind a user's login within the "MyChart Patient Portal." Though Adena takes issue with Plaintiff's attempt to "create the impression pixels may have been embedded in the MyChart portal" (doc. 10-1, 3), Plaintiff contends that communications with the public portion of the website still contain *Biddle* material such as

---

[2] Per Plaintiff's Amended Complaint, these tools include "Meta Platforms, Inc.'s Tracking Pixel (the "Meta Pixel" or "Pixel") and Google, Inc.'s Google Analytics tool." Doc. 20, ¶ 5.

[3] Because Adena does not challenge the *Biddle* claim, the Court is not asked to consider the content of Plaintiff's communications with Adena's website and whether they contain material sufficient to state a *Biddle* claim. Hence, for the purposes of this motion, the Court assumes that the communications contained *Biddle* material, as alleged.

[3]

"searches for specific health conditions and treatment and the booking of medical appointments with a specific physician." Doc. 20, ¶ 6.

Adena divides its argument into three (3) sections. First, Adena argues that Count II must be dismissed because the Electronic Communications Privacy Act ("ECPA")[4] "does not apply when one party to the communication consents to the supposed interception," and the exceptions to that rule are likewise inapplicable. Second, Adena argues that Counts III through VII are subsumed by Count I (*Biddle*), based on Ohio Supreme Court case law. Third, Adena argues that Counts III, V, and VII fail for independent reasons. The Court addresses each in turn.

### A. Count II: Criminal or Tortious Purpose Under the ECPA

Adena argues that it cannot be held liable under the ECPA because it was a party to the communications and consented to the interception. Indeed, the ECPA provides for an exception when a party to the communication is the interceptor, "or where one of the parties to the communication had given prior consent to such interception." 18 U.S.C. § 2511(2)(d). Plaintiff does not dispute that Adena was a party to the communications. Rather, Plaintiff points to the exception to the exception, which provides that a party to the communication may be held liable for its interception when the interception occurs "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.*

The primary point of departure here, both between the parties herein and among the disparate caselaw, is the construction of "purpose" in the clause above. Adena cites case law in support of its position that the word "purpose" must "limit[] the cause of action to instances where one party to the conversation deliberately seeks to harm the other participant." Doc. 10-1, 6 (citing *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)). Plaintiff argues that the word "purpose"

---

[4] Adena notes that the ECPA amended the Wiretap Act. Hence, Plaintiff's claim under Count II is sometimes referred to as a "wiretapping claim."

refers to the "intended use" of the intercepted communications. Doc. 25, 6 (citing *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)). Thus, so long as the intended use at the time of interception is criminal or tortious, the statute applies regardless of any nefarious intent on the part of the interceptor, under Plaintiff's construction. Neither party enjoys the benefit of any Sixth Circuit precedent to answer the question in their favor.

Adena's motion attacks Plaintiff's ECPA claim on two fronts, asserting that Plaintiff has failed to allege an independent tort, and that Plaintiff has failed to allege the requisite intent under the statute.

### i. Independent Tort

To support its position that Plaintiff must allege an independent tort, Adena cites the Second Circuit's opinion in *Caro*, which held that "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is **independent of the intentional act of recording**." 618 F.3d at 100. This Court is not obligated to follow *Caro*, which, in any event, is easily distinguishable from the instant case. In *Caro*, the plaintiff brought a wiretapping claim after the defendant recorded (i.e., intercepted) a heated family conversation (involving both parties and others) and later submitted the recording in probate proceedings. *Id.* The Second Circuit affirmed the dismissal of the plaintiff's complaint because of the lack of any tortious conduct beyond the act of recording.[5] But even if *Caro* was binding authority, or at least factually similar, Adena's argument would still be a tough sell.

In the instant case, Plaintiff's *Biddle* claim (Count I) constitutes an independent tort, and that claim arises not from the mere *interception* of Plaintiff's clicks and search terms, but from the

---

[5] The *Caro* plaintiff also made a claim for intrusion upon seclusion based on the interception, but the Second Circuit explained that, under Connecticut law, intrusion upon seclusion is a tort "that occurs through the act of interception itself." *Id.* at 101.

[5]

*disclosure* of that *Biddle* material to third parties. Clinging to *Caro*'s holding that "a simultaneous tort arising from the act of recording itself is insufficient," Adena contends that Plaintiff cannot satisfy the independent tort requirement because the disclosure "is alleged to have occurred *at the very moment* the communications are intercepted." Doc. 10-1, 7 (emphasis original). Because the disclosure is alleged to have occurred "*simultaneously* with the interception," Adena argues, "the two are inseparable, which defeats the claim." *Id.*

Obviously, the disclosure must follow the interception. It cannot precede it. Such is the functional sequence, and so the interception and disclosure are functionally distinct steps. Neither the speed of the sequence nor the degree to which the sequence is automated ("with no intervening human act or decision making required" (doc. 10-1, 7)) could change that outcome. Otherwise, tortfeasors under the ECPA would enjoy a bizarre defense to liability as a reward for their efficiency. In sum, the Court is satisfied that Plaintiff has sufficiently alleged an independent tort in the form of the *Biddle* claim.

### ii. Criminal or Tortious Purpose

To establish the requisite "purpose of committing any criminal or tortious act," Adena essentially argues that Plaintiff must show that Adena's intent was akin to malice—i.e., "a deliberate intent to harm [Plaintiff]." Doc. 10-1, 8. And Adena further argues that Plaintiff could not "reasonably" accuse Adena of such intent "because it is absurd to suggest that a hospital would intentionally seek to harm its own patients for any reason." *Id.* at 9. Citing Plaintiff's allegation that the communications were intercepted "for marketing and revenue generation," Adena claims that such allegation contradicts Plaintiff's allegation that the interception was made "for the purpose of committing a tortious or criminal act." *Id.* at 8 (quoting doc. 1). Therefore, "Plaintiff's conclusion… must cede to her contrary factual allegations." *Id.* The Court disagrees with Adena's

construction of the purpose requirement, and ultimately concludes that Plaintiff has alleged sufficient facts to meet her burden as to Adena's intent.

Adena proffers its construction of the purpose requirement in contrast to the "'results based' theory of wiretap violation," which Adena contends has been "flatly rejected" by various courts. *Id.* at 9. For example, Adena cites to *Med. Lab'y Mgmt. Consultants v. Am. Broad. Companies, Inc.*, which states that the pertinent question "is not whether they are ultimately liable for conduct found to be tortious, but whether, at the time the recording took place, they recorded the conversation with the express intent of committing a tort." 30 F. Supp. 2d 1182, 1205 (D. Ariz. 1998), *aff'd,* 306 F.3d 806 (9th Cir. 2002). As Adena would have it, "the express intent of committing a tort" would stand in contrast to Adena's stated purpose, "for marketing and revenue generation"; that the act of marketing and revenue generation was allegedly accomplished through tortious disclosure of *Biddle* material is a mere "result" in Adena's view. *See Caro*, 618 F.3d at 100 ("[T]he offender must have as her objective a tortious or criminal result. Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act.").

The Court reads these cases to be speaking as much to the *contemporaneity* requirement of the intent as they are to the quality of intent. In both *Caro* and *Med Lab'y Mgmt. Consultants*, the respective plaintiffs failed to show that the intercepting parties had a criminal or tortious purpose "*at the time the recording took place*." *Med Lab'y Mgmt. Consultants*, 30 F. Supp. 2d at 1205 (emphasis supplied). Without such contemporaneous intent (*and* an independent tort), the act of recording by a participant in the conversation is no more tortious than if the participant committed the conversation to memory. Neither would the latter use of such communication for tortious or

criminal ends cause liability to attach to the prior act of recording, unless it can be shown that the communication was intercepted as a means toward a tortious or criminal end contemplated at the time of interception.

In this sense, Adena's claim that the interception and disclosure are "inseparable" rings truer in the context of this "intent" inquiry. As alleged, the interception and disclosure are inseparable because Adena intercepted the communications containing *Biddle* material *for the purpose of disclosure*. That was the relevant "intent" for the purpose of the wiretapping claim which Adena is alleged to have had contemporaneously with the interception. Adena cannot escape this result by pointing to the "marketing and revenue generation" purpose also alleged by Plaintiff. As Plaintiff notes in her response, "The existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022).

In this case, as alleged, Adena intercepted communications from Plaintiff containing *Biddle* material. These communications were then immediately transmitted—i.e., disclosed—to third parties without Plaintiff's consent. Unauthorized disclosure of *Biddle* material is plainly tortious.[6] It is also, in this case, entirely by design: Adena's purpose for installing tracking tools on its site was to intercept communications from its patients in order to disclose such communications to a third party for "marketing and revenue generation." Doc. 20, ¶ 153.[7] The inherently tortious act of

---

[6] Notwithstanding the limited defenses to liability for the unauthorized disclosure of *Biddle* material (such as when such disclosure is required by law) Ohio courts have not foreclosed the possibility that even inadvertent disclosure may create an actionable *Biddle* claim. *Scott v. Ohio Dep't of Rehab. & Corr.*, 2013-Ohio-4383, ¶ 30, 999 N.E.2d 231, 240.

[7] At this early stage of litigation, it is unclear what proportion of the communications intercepted and disclosed contain *Biddle* material as opposed to nonprivileged content. If Plaintiff's claimed experience is shown to be more of an anomaly than the norm, then Adena may have a stronger argument regarding the "purpose" of the interceptions. However, taking all reasonable inferences in favor of Plaintiff, the Court infers that the communications between patients and Adena's website which (when intercepted and disclosed) generate revenue and valuable marketing data will predominantly contain *Biddle* material. *See supra* n.3. As such, the primary purpose of the interception was to disclose communications containing *Biddle* material.

unauthorized disclosure distinguishes this case from those cited by Adena—e.g., *Caro*, *Med Lab'y Mgmt. Consultants*, and *Boddie*—none of which involved *Biddle* material, thus rendering the propriety of the purpose of the interception in those cases as comparably ambiguous. Consider, for example, the Sixth Circuit's observation in *Boddie v. Am. Broad. Companies, Inc.* that "from a journalist's point of view, dissemination is the reason for the interception." 881 F.2d 267, 270 (6th Cir. 1989). Though the dissemination *could* prove defamatory or otherwise trigger liability for the journalist, liability for the act of recording (i.e., a wiretap claim) would only attach if the journalist recorded the communication with the purpose of (e.g.) tortiously defaming the subject. In contrast, the unauthorized disclosure of *Biddle* material communicated between patient and hospital is an independent tort carrying no such speculation. Because Plaintiff has sufficiently alleged that Adena intercepted her communications for a criminal or tortious purpose, and for the reasons stated above, the Court denies Adena's motion to dismiss as to Count II.

### B. Counts III - VII

Adena raises various arguments favoring dismissal of Counts III through VII of Plaintiff's complaint. The Court will address the arguments as to each count but will first address Adena's argument that Counts III through VII are subject to blanket dismissal because they are subsumed under the *Biddle* claim (Count I).

#### *i. Claims Subsumed under Biddle*

Adena contends that Counts III through VII cannot proceed pursuant to the holding of the Ohio Supreme Court in *Biddle v. Warren General Hospital*, 715 N.E.2d 518 (Ohio 1999). In *Biddle*, in which a "breach of confidence" claim was first recognized (i.e., a *Biddle* claim), the Supreme Court of Ohio held that the other theories of liability raised by the plaintiffs were "either unavailable, inapplicable because of their respective doctrinal limitations, or subsumed by the

[9]

[*Biddle*] claim." *Id.* at 529. Plaintiff argues that this holding was merely a summary affirmance of the appellate court and should not be understood to mean that a *Biddle* claim requires broad dismissal of claims at the pleading stage. Doc. 25.

In affirming the appellate court's dismissal of the "other theories of liability," the Ohio Supreme Court in *Biddle* recognized that "it is the very awkwardness of the traditional causes of action that justifies the recognition of the tort of breach of confidence in the first place." *Id.* at 529. More recently, in *Menorah Park Ctr. for Senior Living v. Rolston*, the Supreme Court of Ohio discussed *Biddle* at length, noting,

> This court recognized that in an effort to establish a civil remedy for such an evident wrongdoing, courts had shoehorned a breach-of-confidence theory of recovery into many traditional legal theories—e.g., invasion of privacy, defamation, implied breach of contract, intentional and negligent infliction of emotional distress, implied private statutory causes of action, breach of trust, detrimental reliance, negligence, and medical malpractice—all of which are ill-suited for the purpose of addressing a breach-of-confidence situation.

2020-Ohio-6658, 164 Ohio St. 3d 400, 404, 173 N.E.3d 432, 436–37. However, the *Menorah Park* opinion stopped short of stating that all such claims must be subsumed under a *Biddle* claim.

The Court agrees with Plaintiff that Ohio law does not require that *all* of Plaintiff's claims be automatically dismissed under the rule of *Biddle*, and the Court also recognizes Plaintiff's broader point about this stage of these proceedings, to the extent that dismissal of Counts III through VII may depend on factual issues yet to be sorted out on the nascent record. In both *Biddle* and *Menorah Park*, the Ohio Supreme Court refers to the factual basis of the claims as the primary consideration. *See Biddle*, 715 N.E.2d at 529 ("While cases may arise in which the facts fall outside the parameters of this tort, but within the parameters of some other theory of liability, this is not

[10]

such a case."); and *Menorah Park*, 164 Ohio St. 3d at 404, ("The plaintiffs in *Biddle*… alleged several causes of action from that same factual root."). As such, the Court declines to dismiss Counts III-VII based on Adena's theory of broad and automatic subsumption of claims under *Biddle*. However, as explained below, the Court concludes that the reasoning of *Biddle* and *Menorah Park* applies to Plaintiff's claims for invasion of privacy (Count IV), breach of fiduciary duty (Count VI), and negligence (Count VII).

      ii.  *Count IV, Count VI, and Count VII are subsumed under Biddle.*

Regarding subsumption, this Court understands the Ohio case law to call for dismissal of claims which are based on the same factual allegations as the *Biddle* claim. To that end, the Court finds that the invasion of privacy claim (Count IV), the breach of fiduciary duty claim (Count VI), and the negligence claim (Count VII) are subject to dismissal.

Count IV raises a claim for invasion of privacy based on the "intrusion upon seclusion" theory. As Adena points out, invasion of privacy is among the torts specifically listed in *Menorah Park* as "ill-suited for the purpose of addressing a breach-of-confidence situation," (164 Ohio St. 3d 400, 404) and a similar claim was dismissed as subsumed on that basis in *Biddle* (715 N.E.2d at 529). The Court agrees that the invasion of privacy claim relies upon the same facts as the *Biddle* claim, though the former is "ill-suited" as compared to the latter,[8] and is therefore appropriately subsumed.

Plaintiff has pleaded Count VI and Count VII in the alternative to the *Biddle* claim, and has argued that their dismissal, if ordered, should be "contingent on [Plaintiff's] ability to pursue

---

[8] Plaintiff argues that intrusion upon seclusion should be considered a "separate and distinct" tort from the *Biddle* claim because an intrusion upon seclusion claim has "distinct elements" such as "evidence of an intrusion into a private setting." Doc. 25, n.7. As the Court sees it, this distinction does not demonstrate that Count IV is independent of Count I; rather, the elements of an intrusion upon seclusion claim underscore that such a claim is "ill-suited" to a breach of confidence situation. Plaintiff argues that Adena's installation of tracking tools (on its own website) was "akin to placing a wiretap on Plaintiff's personal devices." Doc. 25, n.7. The Court disagrees, and, in any event, it's plain that the intrusion upon seclusion claim rests on the same factual allegations as the *Biddle* claim.

[her *Biddle* claim] under a negligence theory, if supported by the evidentiary record." Doc. 25, 14. But whether a *Biddle* claim can be pursued under a negligence theory is a legal determination based on Ohio law, not a fact to be revealed in discovery. As alleged, the *Biddle* claim, the negligence claim, and the breach of fiduciary duty claim are differentiated only by their standard of care. *See* doc. 20, 45 (regarding the *Biddle* claim, "Medical providers in Ohio have a duty to their patients to keep their [*Biddle* material] confidential."); *id.* at 58 ("[Adena] breached its fiduciary duty to Plaintiff… by failing to protect and/or intentionally disclosing [*Biddle* material] to third parties without authorization or consent."); *id.* at 60 (regarding the negligence claim, "[Adena] owed Plaintiff… a duty to keep their [*Biddle* material] completely confidential."); *see also Strock v. Pressnell*, 38 Ohio St. 3d 207, 216, 527 N.E.2d 1235, 1243 (1988) ("A claim of breach of a fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care.")

The Court need not determine that the *Biddle* claim is coterminous with the standard of care under a breach of fiduciary duty or negligence claim before dismissing the alternative claims. The defining characteristic of a *Biddle* claim is the duty dictated by the confidential relationship between the parties, the breach of which is uniquely harmful. *See Biddle*, 86 Ohio St. 3d at 400 ("[A] more appropriate basis [for liability] can be found in the nature of the physician-patient relationship itself, either because of its fiduciary character or because it is customarily understood to carry an obligation of secrecy and confidence."). If Plaintiff cannot establish the duty of confidence underlying a *Biddle* claim, she will have no better luck establishing a breach of fiduciary duty or negligence claim upon these facts. And if Ohio law has delineated the contours of the *Biddle* duty of confidence such that no claim will lie for negligent unauthorized disclosure, then Plaintiff may not "shoehorn" the *Biddle* claim into a "traditional legal theory… ill-suited for

the purpose of addressing a breach-of-confidence situation." *Menorah Park*, 164 Ohio St. 3d at 404. Therefore, Counts VI and VII shall be dismissed as they are subsumed under the *Biddle* claim.

### iii. Count III is not subsumed and is properly pleaded.

Count III brings a claim under Ohio Revised Code § 2307.60, which authorizes "anyone injured… by a criminal act" to "recover full damages in a civil action." § 2307.60(A)(1). Adena contends that Count III must be subsumed by the *Biddle* claim because it arises from the "same factual root." *Menorah Park*, 164 Ohio St. 3d at 404. Alternatively, Adena argues that dismissal is warranted because a claim under R.C. 2307.60 must be based on a criminal act under Ohio law. Therefore, Plaintiff may not recover for her claim based on alleged criminal violations of 42 U.S.C. § 1320d-6(a)(3), the federal statute which prohibits knowingly disclosing individually identifiable health information to a third party.

The Court is not persuaded that a *Biddle* claim should subsume a statutory cause of action. As Plaintiff argues, to reject a statutory cause of action in favor of a judicially created cause of action would go beyond the Court's role and usurp that of the legislature. Furthermore, Adena's theory that "a criminal act" under R.C. 2307.60 must be construed to refer to only criminal acts under Ohio law is not persuasive. The Court recognizes the lack of case law demonstrating successful recovery for a claim based on non-Ohio law, but Adena has not provided authoritative support for its assertion that the Ohio legislature "could not have intended for the statute to be applied to *any* criminal law in existence regardless of the jurisdiction under which the law arises." Doc. 10-1, 15. In the Court's view, the extant case law points toward a broad construction, and the plain language of the statute does not limit its application to only Ohio law.

In *Jacobsen v. Kaforey*, the Supreme Court of Ohio addressed whether R.C. 2307.60 creates an independent cause of action "or merely codifies Ohio common law that a civil action

does not merge into a criminal prosecution." 2016-Ohio-8434, ¶ 5, 149 Ohio St. 3d 398, 399. Though not directly addressing the question of the statute's application to criminal acts in other jurisdictions, the Supreme Court of Ohio nevertheless concluded that R.C. 2307.60 "creates a statutory cause of action for damages resulting from **any criminal act**." *Id.* at ¶ 10 (emphasis supplied). This broad language, similar to that in the statute itself, leaves no space for the limitation Adena would have the Court impose on Plaintiff's claim under R.C. 2307.60. As such, the Court denies Adena's motion as to Count III.

### iv. Count V is not subsumed and is properly pleaded.

Plaintiff raises a claim for unjust enrichment under Count V, alleging that she conferred a benefit upon Adena in the form of her PHI and that Adena unjustly retained such benefits. Adena first argues that this claim should be subsumed under the *Biddle* claim because, pursuant to the holding in *Menorah Park*, Plaintiff cannot "shoehorn" a breach of confidence claim into a traditional legal theory. Doc. 10-1, 12. Alternatively, Adena argues that Plaintiff has failed to properly state a claim for unjust enrichment. To state a claim for unjust enrichment, Plaintiff must show: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Dailey v. Craigmyle & Son Farms, L.L.C.*, 2008-Ohio-4034, ¶ 20, 177 Ohio App. 3d 439, 449, 894 N.E.2d 1301, 1309 (citation omitted).

The Court finds that unjust enrichment stands apart from the other claims because it sounds in equity rather than tort. The economics of an unjust enrichment claim do not bear on a *Biddle* claim. In short, whether Adena breached Plaintiff's confidence is a question entirely distinct from whether Adena was unjustly enriched by Plaintiff's data. Therefore, this claim is not subsumed.

Whether a claim for unjust enrichment is supportable on the facts alleged is less clear. Plaintiff cites to out-of-circuit case law which supports the proposition that the her personal data—which Adena is alleged to have intercepted and disclosed without authorization—may have cognizable value sufficient to sustain a claim of unjust enrichment. *See* doc. 25, 17 (citing *In re Facebook Priv. Litig.*, 572 F. App'x 494 (9th Cir. 2014). Adena, for its part, cites to out-of-circuit case law which says the opposite: "Courts have… routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (internal citations omitted).

At this stage, the Court declines to dismiss Plaintiff's unjust enrichment claim. By plausibly alleging that the intercepted PHI had cognizable value to Plaintiff, and that Adena unjustly reaped that value by disclosing it, without authorization, for "marketing and revenue generation," the Court concludes that Plaintiff has sufficiently alleged the elements of an unjust enrichment claim to survive a motion to dismiss.

## CONCLUSION

For the reasons stated above, Defendant Adena Health System's motion to dismiss (doc. 10) is hereby **GRANTED** as to Count IV (invasion of privacy), Count VI (breach of fiduciary duty) and Count VII (negligence) of Plaintiff Robin Jarrell's First Amended Complaint (doc. 20). The Court **ORDERS** that said counts be **DISMISSED**. Adena's motion is **DENIED** as to the remaining counts.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: January 13, 2025

[15]